UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE SCOTT, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>AT&T INC., et al.,<br><br>          Defendants. | Case No. 19-cv-04063-SK<br><br>**NOTICE OF QUESTIONS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON NOVEMBER 9, 2020 AT 9:30 A.M.  The Court intends to address the questions below at the hearing.  If, in response to a question in this notice, any party intends to rely on authorities not previously cited to the Court, that party is ORDERED to notify the Court and opposing counsel of these authorities by no later than November 3, 2020.  Moreover, the Court advises the parties that it will not accept written answers to this question.

The parties shall be prepared to address the following questions at the hearing:

(1)   Is AT&T's position that it stopped providing its customers' location data to any non-governmental persons or entities on March 29, 2019?  If so, on what evidence does AT&T rely?  The Court notes that AT&T's letter to the Federal Communications Commission ("FCC") states only that AT&T stopped providing its customers' location data to "aggregators," not all non-governmental third-parties.  (Dkt. No. 73-2 (Ex. 1 to Declaration of Greg Hill); *see also* Dkt. No. 105-6 (Ex. B to the Declaration of Abbye K. Ognibene) (chart regarding AT&T's transactions with aggregators).)

(2)   AT&T points to the chart it produced to Plaintiff to show that AT&T stopped providing its customers' location data to third parties.  (Dkt. No. 105-6.)  The chart appears to show AT&T's transactions with aggregators in a week ending on April 2, 2019.  According to the chart, although its location transactions (as AT&T refers to them) with aggregators declined significantly on April 1, 2020, AT&T's chart did not bring the transactions down to zero.  (Dkt. No. 105-6.)  How does this chart

show that AT&T stopped providing its customers' location data third parties, including aggregators?

(3) In its reply, AT&T argues that "certain location information" reflected in the chart attached as Exhibit B the Ognibene Declaration "remained active after March 29, 2019 for life alert companies with life alert pendants or similar devices." (Dkt. No. 108 at p. 5 n. 3.) Where in the record is there evidence to support this statement?

(4) Do Plaintiffs agree that the only entities still receiving AT&T's customers' location data after March 29, 2019 as referenced in Exhibit B are life alert companies with life alert pendants or similar devices? If so, do Plaintiffs contend that AT&T should be enjoined from providing customers' location data to companies with life alert pendants or similar devices under its requested injunction?

(5) Do Plaintiffs have any other evidence to show that AT&T has continued to provide its customers' location data to third parties?

(6) In the Notice of Apparent Liability for Forfeiture and Admonishment from the FCC, the FCC states that AT&T sold access to its customer location information directly to location-based service providers, but the names of those providers are redacted. (Dkt. No 105-10 (Ex. F. to Ognibene Decl.) at ¶ 13; *see also id*. at ¶ 17 (noting the "five location-based service providers with whom [AT&T] contracted directly".) Are the companies to which AT&T directly provided its customer location data considered "aggregators," or is this a different group of companies?

(7) Did AT&T provide the information requested by Commissioner Starks in his letter dated August 4, 2020? (Dkt. No. 105-9 (Ex. E to Ognibene Decl.).)

(8) Has AT&T bought, sold, shared or received the "bidstream" data as discussed in Commissioner Starks' letter? If so, is AT&T continuing to do so?

(9) Plaintiffs that AT&T's motion does not challenge every form of injunctive relief Plaintiffs seek. (Dkt. 105-2 (Plaintiffs' Opp.) at p. 6 n. 5.) Do Plaintiffs describe additional forms of injunctive relief in footnote 6 on page 8 of their opposition? Are there other forms of injunctive relief which Plaintiffs seek? If so, where in their Complaint do they request these other forms of injunctive relief?

(10) If the Court finds that AT&T stopped providing its customers' location data to third parties before Plaintiffs filed this lawsuit, on what basis would Plaintiffs have standing to enjoin AT&T's illegal conduct?

   a. Do Plaintiffs allege any other illegal conduct?

   b. Do Plaintiffs allege any current or ongoing violations of the FCC's CPNI regulations

   c. Do Plaintiffs allege any current or ongoing failure to properly safeguard customers' location data?

(11) Do Plaintiffs allege that AT&T's systems have been breached or only that systems

2

    of third-parties' systems, which obtained AT&T's data, have been breached?

(12) Plaintiffs also contend that they have standing to seek an injunction to retrieve and/or secure the location data which has already been provided to third-parties. Do Plaintiff have standing to seek such an injunction?

(13) If the Court grants AT&T's motion to dismiss Plaintiffs' request for injunctive relief, do Plaintiffs dispute that the Court should grant AT&T's motion to compel arbitration as well?

**IT IS SO ORDERED**.

Dated: October 30, 2020



SALLIE KIM
United States Magistrate Judge