Shana Scarlett (State Bar No. 217895)
Benjamin Siegel (State Bar No. 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000

Aaron Mackey (State Bar No. 286647)
Adam D. Schwartz (State Bar No. 309491)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333

*Attorneys for Plaintiffs and the Putative Class*

Sara B. Brody (State Bar No. 130222)
Stephen Chang (State Bar No. 312580)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200

*Attorneys for Defendants AT&T Services, Inc. and AT&T Mobility, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KATHERINE SCOTT, CAROLYN JEWEL, and GEORGE PONTIS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>AT&T INC.; AT&T SERVICES, INC.; AT&T MOBILITY, LLC; TECHNOCOM CORP.; and ZUMIGO, INC.,<br><br>　　　　　　　　　　Defendants. | No. 3:19-cv-04063-SK<br><br>**FURTHER JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Sallie Kim<br>Hearing Date: November 9, 2020<br>Hearing Time: 9:30 AM |

Plaintiffs Katherine Scott, Carolyn Jewel, and George Pontis "Plaintiffs") and Defendants AT&T Services, Inc. and AT&T Mobility, LLC ("AT&T") submit this Joint Case Management Statement in advance of the Status Conference set for November 9, 2020.

The Parties' filed an Initial Joint Case Management Statement on October 31, 2019. ECF No. 65. A subsequent Joint Case Management Statement was filed on August 17, 2020. ECF No. 101.

I.   **JURISDICTION AND SERVICE**

Plaintiffs' Position: This Court has subject matter jurisdiction over the federal law claim under 28 U.S.C. § 1331 and supplemental subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). As argued in their opposition to the pending motion to dismiss for lack of jurisdiction, Plaintiffs contend that the Court has subject matter jurisdiction over their claims for injunctive relief. ECF No. 105. The Court has personal jurisdiction over AT&T because AT&T purposefully directs its conduct at California and transacts substantial business in California. Plaintiffs paid for AT&T services within the state, and each was injured in California where they reside. AT&T had more than 33,000 employees in California as of 2017, and 1,470 retail locations.

Defendants' Position: As fully briefed in Defendants' Motion to Dismiss (ECF. 73), this Court lacks subject matter jurisdiction over the Plaintiffs' requests for injunctive relief concerning the provision of geolocation information to aggregators because AT&T ceased all such conduct prior to the Plaintiffs filing suit. After the jurisdictional motion is resolved, this case should be resolved in arbitration pursuant to Plaintiffs' contractual agreement and well-settled Supreme Court precedent.

II.   **FACTS**

Plaintiffs' Position: AT&T knowingly and systematically sold its wireless customers' real-time sensitive location data without the required customer consent or any other legal authority, utilizing a woefully inadequate system that allowed for ongoing unauthorized access and repeated data breaches. All the while, AT&T falsely represented to its customers that it would not sell their personal information and would protect such data and keep it safe by utilizing appropriate

safeguards. AT&T's sale of consumers' sensitive location data to credit agencies, bail bondsmen, and countless other third parties violated its customers' privacy and state and federal laws.

By virtue of operating a mobile phone network, AT&T knows its customers' real-time locations because it has to collect that information to provide service to its customers' cellular phones and to locate them in the event they dial 9-1-1. In 2018 and 2019, a series of media reports disclosed—and a later Federal Communications Commission ("FCC") investigation confirmed—that AT&T was selling access to consumers' real-time location data to a multitude of third parties, both directly and indirectly through location data aggregator intermediaries. The location data AT&T sold included data generated from cell-phone network towers and more precise location data generated as part of what's known as Assisted GPS, or "A-GPS" data. AT&T knew or should have known that these third parties sold the data downstream to others, resulting in countless unknown individuals and entities having access to AT&T customers' real-time location data. AT&T sold this data without protecting it or ensuring that downstream access was authorized by customers or by the law.

In February 2020, the FCC proposed a more than $57 million fine against AT&T for these practices, concluding that the company had willfully and repeatedly violated federal law, and related regulations, by improperly disclosing customers' location data and, separately, by failing to employ reasonable measures to discover and protected against unauthorized disclosures.

AT&T's sale of consumers' real-time location data was outrageous and harmful, as it placed customers at a substantial risk of harm that dangerous third parties would obtain their sensitive location data without knowledge or consent. The risk of harm also included misuse by employees of downstream recipients, and theft from downstream recipients due to security vulnerabilities. All the while, customers continued to pay for mobile phone service with inadequate safety and security features based on AT&T's misrepresentations and omissions concerning its practices. Plaintiffs bring this action on behalf of a Class as explained below.

<u>Defendants' Position</u>: Apart from the subject-matter and arbitration issues discussed below, the factual predicate underlying Plaintiffs' lawsuit is fundamentally incorrect.  First, Plaintiffs are

wrong in their assumption that AT&T provided a constant stream of geolocation customer information to any party. To the contrary, under AT&T's policies, customers' geolocation information was provided to third party aggregators only after notice and consent. Moreover, such information was only to be provided for a limited set of pro-consumer uses, such as roadside assistance and fraud prevention (*e.g.*, a bank wanting to confirm that a customer is actually the person in the location when they apply for credit). In this regard, AT&T's geolocation services were unlike an app on a cell phone that uses A-GPS information to constantly track a user. Rather, AT&T's geolocation services were designed to share location information at a point in time with consent. Notably here, none of the Plaintiffs' geolocation information was used or provided to data aggregators without the Plaintiffs' consent. Indeed, the only Plaintiff whose geolocation information was ever provided to a data aggregator was Plaintiff Jewel, whose information was only provided in connection with her own request to AAA for roadside assistance purposes. As a result, Plaintiffs' lawsuit challenges a practice that never impacted any Plaintiff.

Setting aside the above deficiencies, Plaintiffs lack standing to assert injunctive relief relating to the provision of geolocation information to data aggregators (or the parties that receive data through aggregators) because AT&T stopped providing information to aggregators—and publicly announced this fact—before Plaintiffs filed their lawsuit. AT&T publicly announced that, as of March 29, 2019, it no longer provided geolocation information to data aggregators and third parties who received geolocation information from data aggregators. AT&T also produced uncontroverted evidence proving that AT&T no longer provides non-governmental third-parties the ability to purchase a lookup of AT&T customers' location. Prior to March 29, 2019, AT&T had both direct sales—through contractual relationships with location based services providers—and indirect sales—through which AT&T contracted with a data aggregator which in turn contracted with downstream location based services providers. Regardless of whether the contractual relationship with the location based services provider was direct or indirect, from a technological perspective, all data flowed through a data aggregator. The uncontroverted evidence shows that the only location data that flowed from AT&T

after March 29, 2019 was to life alert companies that utilized pendants and other similar devices that a person wears or carries, and not mobile phones. This access to customer location had tangible benefits to consumers, but because of the potential for misuse in a small number of situations, AT&T stopped providing this information to data aggregators and third-parties which received location information through a data aggregator. While the Defendants believe that the Plaintiffs' individual claims should be resolved in the agreed-upon arbitration, even if arbitration is denied, there is no substance to the allegations in this lawsuit and it should be dismissed.

### III.   LEGAL ISSUES

Plaintiffs' Position: In addition to the two pending motions, Plaintiffs anticipate disputes concerning their legal claims under the Communications Act, 47 U.S.C. § 201 *et seq.*; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; Intrusion Upon the Seclusion; California Constitution, Cal. Const. Art. I, § 1; Negligence; and the California Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq*. Plaintiffs also anticipate disputes regarding the relief they seek and their right to pursue this case as a class action.

Defendants' Position: As described herein, Plaintiffs lack standing to assert, and this Court lacks subject-matter jurisdiction over, Plaintiffs' requests for injunctive relief concerning the provision of geolocation information to data aggregators because the undisputed evidence shows that AT&T stopped the challenged-conduct months before Plaintiffs filed suit. *See* ECF No. 73. Moreover, this case should be resolved in arbitration pursuant to the Plaintiffs' contractual agreement and well-settled Supreme Court precedent requiring such claims to be arbitrated as explained in the motion to compel arbitration, ECF No. 35.

AT&T believes that it would be more efficient for the Court to hear argument on and decide the motion to dismiss before it holds argument on the motion to compel arbitration. Despite Plaintiffs' arguments to the contrary, the Court's ruling on the motion to dismiss will impact the Court's consideration of the motion to compel arbitration. AT&T accordingly suggested to Plaintiffs that the parties agree to postpone the hearing on the motion to compel arbitration until after the Court resolves

AT&T's motion to dismiss and then, with the Court's permission, submit supplemental briefing addressing how the ruling on the motion to dismiss affects the motion to compel arbitration. Plaintiffs rejected AT&T's suggestion. AT&T will be prepared to argue the motion to compel arbitration at the hearing on November 9, 2020, but remains of the view that deferring consideration of that motion until after resolution of the motion to dismiss would simplify the proceedings.

## IV. MOTIONS

### A. PRIOR MOTIONS

Certain prior motions were mooted by the parties' stipulation to voluntarily dismiss AT&T, Inc., TechnoCom, and Zumigo without prejudice. ECF No. 61.

### B. PENDING MOTIONS

On September 11, 2019, AT&T filed a motion to compel arbitration. ECF No. 35. Plaintiffs opposed the motion. ECF No. 63. The Parties completed briefing on that motion on November 27, 2019. *See* ECF No. 74.

On November 27, 2019, AT&T moved to dismiss the complaint for lack of subject matter jurisdiction. ECF No. 73. Plaintiffs opposed the motion. ECF No. 105. The Parties completed briefing on October 23, 2020. *See* ECF No. 108.

### C. ANTICIPATED MOTIONS

Plaintiffs' Position: Plaintiffs anticipate moving for class certification and propose below a schedule for the motion.

Defendants' Position: If the case remains in this Court, AT&T anticipates filing a motion to dismiss and/or a motion for summary judgment as to all of Plaintiffs' claims.

## V. AMENDMENT OF PLEADINGS

Plaintiffs' Position: Plaintiffs reserve their right to amend their pleadings and/or add additional parties and propose below a schedule for this amendment.

     Defendants' Position: Given the threshold arbitration and subject-matter issues, Defendants have not yet filed an Answer. Defendants will assert all necessary defenses if and when it becomes necessary to file an answer to the complaint.

## VI. EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have conferred regarding reasonable and proportionate steps taken to preserve evidence related to the issues reasonably evident in this action, if the case proceeds to discovery. The Parties will continue to meet and confer on preservation and ESI.

## VII. DISCLOSURES

The Parties met and conferred regarding compliance with the initial disclosure requirements of Fed. R. Civ. P. 26. The Parties have agreed to provide initial disclosures within a month of the Court's resolution of AT&T's motion to compel arbitration.

## VIII. STATUS OF DISCOVERY

### A. STATUS OF DISCOVERY

Discovery in this case has been stayed pending the resolution of AT&T's motion to compel arbitration, but for limited jurisdictional discovery conducted pursuant to this Court's Orders of January 15, 2020 and July 8, 2020. ECF Nos. 83 and 96. The jurisdictional discovery period ended on September 25, 2020. ECF No. 104.

Plaintiffs' Position: Plaintiffs believe that full fact discovery should begin upon the Court's Order regarding the pending motions, assuming that the Court denies AT&T's motion to compel arbitration.

Defendants' Position: Defendants contend this case should be compelled to binding arbitration. If the case remains in this Court, Defendants believe discovery should proceed first with limited fact discovery on whether Plaintiffs' geolocation information was used without their consent before any class discovery.

### B.   SCOPE OF ANTICIPATED DISCOVERY

<u>Plaintiffs' Position</u>:  Plaintiffs expect that discovery will focus on AT&T's policies and practices regarding its disclosure and safeguarding of customers' real-time location data, as well as its public representations regarding those practices. Plaintiffs also expect to seek discovery regarding the scope and severity of repeated breaches of location data information, as well as what—if any—remedial measures were undertaken by AT&T and when. Plaintiffs anticipate seeking all discovery previously provided to the FCC in relation to its investigation of AT&T's location data sales practices.

<u>Defendants' Position</u>: If the case remains in this Court, the scope of initial discovery should be limited to the threshold facts regarding Plaintiffs' claims—whether Plaintiffs' geolocation information was used without their consent.  Defendants assert that none of the Plaintiffs' information was used without their consent and anticipate this will be the only discovery needed to dispose of the case.

### C.   PROPOSED LIMITATIONS OR MODIFICATIONS TO THE DISCOVERY RULES

<u>Plaintiffs' Position</u>: Plaintiffs do not propose to limit or modify the discovery rules. Defendants request the trifurcation of discovery – discovery related first to "targeted merits discovery" (then briefing on a motion for summary judgment); next discovery related to class certification; then discovery related to experts, and then finally a class certification hearing. This trifurcation is on top of the limited discovery already directed at jurisdiction, essentially requesting an unheard of "quadfurcation" of discovery.

Many reasons exist why such a proposal is unworkable, not the least of which is the inefficiencies. For decades, courts have declined to bifurcate discovery between "merits phased" and "class certification" phased because of the overlap between these two concepts. Allowing bifurcation invites a series of discovery disputes and motions, taking up scarce judicial resources, as the parties often dispute not the relevance of information, but the timing of when it will be produced. For this reason, most courts reject such proposals for discovery. *See True Health Chiropractic Inc v.*

*McKesson Corp.,* 13-CV-02219-JST, 2015 WL 273188, at *2 (N.D. Cal. Jan. 20, 2015) (the overlap between individual and class discovery weighs against bifurcation); *In re Rail Freight Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009) ("Bifurcated discovery fails to promote judicial economy when it requires ongoing supervision of discovery. If bifurcated, this Court would likely have to resolve various needless disputes that would arise concerning the classification of each document as 'merits' or 'certification' discovery.") (internal citation and quotations omitted).

Second, allowing bifurcated (or in this case quadfurcated) discovery, would prevent class certification being brought at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Plaintiffs' proposed schedule allows for a class certification motion to be brought within seven months of this Court's ruling on the motion to compel arbitration. Defendants' proposal lacks any timing for the filings of class certification motions, but it would appear that at least a year would pass before the motion would be ripe for hearing.

Third, defendants' proposal would have the motion for summary judgment heard prior to class certification, requiring the defendants to clearly waive any arguments against one-way intervention, which it is not clear that they are doing. *See e.g., Villa v. San Francisco Forty-Niners, Ltd.,* 104 F. Supp. 3d 1017, 1022–23 (N.D. Cal. 2015). Unless the defendants willing to waive their arguments that all class members will get the benefit of a denial of summary judgment, it cannot be brought prior to class certification.

Finally, defendants' proposal regarding "expert discovery" remains troublingly opaque. It is not clear if defendants are proposing a period of discovery of facts related only to expert reports, or whether this period would be limited to the depositions of the experts. Regardless, the proposal remains rife with inefficiencies.

Defendants' Position: Defendants believe that discovery should proceed in two phases. The first phase should be limited and targeted discovery on the merits of Plaintiffs' claims, and in particular to allow Plaintiffs to determine whether any of their geolocation information was used or shared without consent. Because discovery will show that none of the Plaintiffs' geolocation information was

shared without consent, and that two of the Plaintiffs' geolocation information was not shared at all, Defendants believe that dispositive motion practice should follow this first phase of discovery and will end the case. Only if Plaintiffs have a claim, should there be discovery on class certification issues.

     **D.**    **STIPULATED E-DISCOVERY ORDER:**

The Parties will meet and confer regarding a stipulated ESI order.

     **E.**    **PROPOSED DISCOVERY PLAN PURSUANT TO FED. R. CIV. P. 26(F)**

The Parties will make their initial disclosures following a ruling on AT&T's pending motion to compel arbitration. The Parties disagree, as described above, regarding the subjects on which discovery is needed. The Parties report no issues at this time regarding the disclosure, discovery, or preservation of ESI and no issues at this time regarding claims of privilege or of protection as trial-preparation materials. The Parties disagree, as described above, regarding whether any changes should be made in the limitations of discovery. The Parties do not seek at this time any other orders under Rule 26(c).

     **F.**    **IDENTIFIED DISCOVERY DISPUTES**

There are no current identified discovery disputes.

**IX.**    **CLASS CERTIFICATION**

All counsel of record have reviewed the Procedural Guidance for Class Action Settlements.

<u>Plaintiffs' Position</u>: Pursuant to Civil L.R. 16-9(b), the Plaintiffs provide the following additional information:

This action is maintainable as a class action under Fed. R. Civ. P. 23 paragraphs (a), (b)(2), and (b)(3).

The Plaintiffs' proposed class includes all natural persons who were or are AT&T wireless subscribers residing in California between 2011 and the present and whose carrier-level location data AT&T permitted or caused to be used or accessed by any third party without proper authorization.

Plaintiffs are entitled to maintain the action, as illustrated by, inter alia, the following facts:

1. The Class is so numerous that joinder of all members is impracticable. Upon information

and belief, Class members number in the millions.

2. The Class is readily ascertainable, as each member is or was a customer of AT&T, and thus can be identified by AT&T's business records and related documents.

3. There are questions of law or fact common to the Class. These questions include, but are not limited to, those identified in Plaintiffs' Complaint, ECF No. 1, at ¶ 279.

4. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class members, are AT&T subscribers whose privacy rights were violated and who were subjected to the deceptive conduct alleged herein.

5. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class members. Furthermore, Plaintiffs have retained competent counsel.

6. Questions of law or fact common to the Class predominate over any questions affecting only individual Class members or Plaintiffs.

7. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy complained of herein.

8. In acting as alleged above, AT&T has acted on ground generally applicable to the entire Class, thereby making relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications.

9. Injunctive relief is necessary to prevent further unlawful and unfair conduct by AT&T. Money damages, alone, could not afford adequate and complete relief.

As discussed below, Plaintiffs anticipate moving to certify the Class seven months from the date of the Court's ruling on the pending motions.

Defendants' Position: Defendants contend class certification is not appropriate and will respond to Plaintiffs' motion if and when appropriate. Because any information provided in the past was done on a one-time basis with consumer consent, the issue of whether any of the Plaintiffs information was used without consent is highly individualized and does not support class certification. Moreover, as explained, there is no conduct to enjoin.

X. **RELATED CASES**

The Parties are not aware of any related cases pending in this District.

**XI.     RELIEF**

Plaintiffs' Position: Plaintiffs seek an order that this case may be maintained as a class action under Fed. R. Civ. P. 23; a judgment against AT&T for Plaintiffs' and the Class' asserted causes of action; public injunctive relief requiring cessation of Defendants acts and practices, compliance with federal privacy laws and regulations, and a cessation of false or misleading public statements regarding its sale or safeguarding of customer location data; monetary damages, including punitive damages; pre- and post-judgment interest; reasonable attorney's fees and costs incurred; any and all other relief to which Plaintiffs and the Class may be entitled.

Defendants' Position: If the case remains in this Court, this case should be dismissed.

**XII.    SETTLEMENT AND ADR**

The Parties have complied with ADR Local Rule 3-5. Given threshold issues, the parties agree that ADR is not appropriate at this time.

**XIII.   CONSENT TO MAGISTRATE JUDGE**

The Parties have consented to proceed before a magistrate judge for all purposes.

**XIV.    OTHER REFERENCES**

Defendants contend this case should be referred to binding arbitration.

**XV.     NARROWING OF ISSUES**

The Parties have not identified any issues that can currently be resolved by stipulation, but will continue to meet and confer as any such issues arise in the case.

**XVI.    EXPEDITED TRIAL PROCEDURE**

This case should not be handled under the Expedited Trial Procedure

**XVII.   PROPOSED SCHEDULING**

Plaintiffs' Position:  Should the Court deny Defendants' motion to compel arbitration, the Plaintiffs' propose that discovery begin immediately upon entry of the Order and that the case proceed along the following schedule:

| Event | Deadline |
|---|---|
| Meet and Confer Regarding ESI Protocol | within 1 week from Order |
| Complete Initial Disclosures | 30 days from Order |
| Deadline to File Amended Complaint | 60 days from Order |
| Substantial Completion Deadline | 6 months from Order |
| Motion for Class Certification Due | 7 months from Order |
| Opposition to Class Certification Due | 8 months from Order |
| Mandatory Settlement Discussions | 8.5 months from Order |
| Reply to Class Certification Due | 9 months from Order |
| Close of Discovery | 10 months from Order |
| Motions for Summary Judgment Due | 12 months from Order |
| *Daubert* Briefing and Oppositions to Summary Judgment Due | 13 months from Order |
| Replies to Summary Judgement and Oppositions to *Daubert* Briefing Due | 14 months from Order |
| Replies to *Daubert* Briefing Due | 15 months from Order |
| Trial | 18 months from Order |

Plaintiffs object to defendants' proposed tri/quadfurcation of discovery for the reasons stated above.

Defendants' Position: If the Court denies Defendants' motion to compel arbitration, the case would proceed with limited and targeted merits discovery on the Plaintiffs' claims (namely whether any of the Plaintiffs' geolocation information was ever used without their consent) for three months, dispositive motion filings and hearings will follow for approximately the next three months. Following a determination on the motion for summary judgment, fact discovery on class certification would proceed for the next three months followed by expert discovery for three months, and then a class certification hearing. Trial would be scheduled nine months after ruling on class certification.

| Event | Defendants' Request |
|---|---|
| Phase I Discovery: Limited Merits Discovery | For 3 months following ruling on motion to compel arbitration and motion to dismiss |
| Summary Judgment re Phase I Merits Disputes | For 3 months following Phase I Discovery |
| Phase II Discovery: Class Certification | For 3 months following determination on motion for summary judgment in Phase I Motions |
| Phase III Discovery: Experts | For 3 months following Phase II Discovery |
| Class Certification Hearing | Following Phases II and II Discovery |
| Trial | 9 months following class certification ruling |

District courts in the Northern District of California have ordered bifurcated discovery in the same manner that Defendants propose, recognizing that proceeding with an initial limited and targeted merits discovery and summary judgment phase was appropriate when it was efficient to streamline the issues and ultimately simplify the case. *See In re Capacitors Antitrust*, No. 14-CV-03264-JD, 2016 WL 5724960, at *2 (N.D. Cal. Sept. 30, 2016), *supplemented sub nom. In re Capacitors Antitrust Litig.*, No. 14-CV-03264-JD, 2018 WL 4558265 (N.D. Cal. Sept. 20, 2018) (ordering bifurcated discovery, with an initial limited merits phase, in an effort to "realize downstream efficiencies and economies in discovery and class certification and other motions"); *In re Coca-Cola Prod. Mktg. & Sales Practices Litig. (II)*, No. 14-MD-02555-JSW, 2016 WL 2930964, at *10 (N.D. Cal. May 19, 2016) (adopting defendant's trifurcated discovery plan, with an initial limited discovery phase as to a merits dispute and an early summary judgment on such issue).

## XVIII. TRIALS

Plaintiffs' Position: Plaintiffs demand a jury trial on all issues triable and have proposed a schedule above that would set a trial date within 18 months of the Court's resolution of the pending motions.

Defendants' Position: Defendants contend this case should be compelled to binding arbitration. If the case proceeds, Defendants cannot at this time estimate the length of trial.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Parties have each filed their Certification of Interested Parties. *See* ECF Nos. 16 and 41.

## XX. PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Date: November 2, 2020

/s/
Shana E. Scarlett (State Bar No. 217895)
Benjamin Siegel (State Bar No. 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com
bens@hbsslaw.com

Thomas M. Sobol (*pro hac vice* forthcoming)
Abbye R. Klamann Ognibene (State Bar No. 311112)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
abbyeo@hbsslaw.com

Aaron Mackey (State Bar No. 286647)
Andrew Crocker (State Bar No. 291596)
Adam D. Schwartz (State Bar No. 309491)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333
Fax: (415) 436-9993
amackey@eff.org
andrew@eff.org
adam@eff.org
*Attorneys for Plaintiffs and the Putative Class*

/s/
Angela C. Zambrano (*admitted pro hac vice*)
Robert Velevis (a*dmitted pro hac vice*)
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400
angela.zambrano@sidley.com
rvelevis@sidley.com

Sara B. Brody (State Bar No. 130222)
Stephen Chang (State Bar No. 312580)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400
sbrody@sidley.com
stephen.chang@sidley.com

*Attorneys for Defendants AT&T Services, Inc. and AT&T Mobility, LLC*

**ATTESTATION**

I, SHANA E. SCARLETT, am counsel for the plaintiffs in this action. I am the registered ECF user whose username and password are being used to file this Joint Case Management Statement. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that counsel for Defendants AT&T Services, Inc. and AT&T Mobility, LLC concurred in this filing.

Dated: November 2, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP

  s/ Shana E. Scarlett
SHANA E. SCARLETT (State Bar No. 217895)

715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

*Attorney for Plaintiffs and the Putative Class*