UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE SCOTT, et al., <br> Plaintiffs, <br> v. <br> AT&T INC., et al., <br> Defendants. | Case No. 19-cv-04063-SK <br><br> **ORDER REGARDING MOTION TO DISMISS AND MOTION TO COMPEL ARBITRATION** <br><br> Regarding Docket Nos. 35, 73, 106, 117, 132, 141 |

This matter comes before the Court upon consideration of the motion to dismiss and the motion to compel arbitration filed by AT&T Services, Incorporated and AT&T Mobility LLC (collectively, "AT&T"). Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS both of AT&T's motions for the reasons set forth below. The Court GRANTS the request for judicial notice filed by Plaintiffs Katherine Scott, Carolyn Jewel, and George Pontis (collectively, "Plaintiffs") pursuant to Federal Rule of Evidence 201. (Dkt. No. 106.)

The Court FURTHER GRANTS AT&T's motion to seal Exhibit 1 to the Declaration of Robert S. Velevis in support of AT&T's notice of supplemental evidence. (Dkt. No. 117.) The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to seal Exhibit C to the Declaration of Benjamin Siegel in support of Plaintiffs' response to the Court's Order requiring further briefing. (Dkt. No. 132.) The first and second columns of chart shall be filed under seal, and the remainder of Exhibit C shall be publicly filed. The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to seal Plaintiffs' further brief and exhibits regarding AT&T's call routing. (Dkt. No. 141.). The names of the companies on page 5 line 8 of Plaintiffs brief and the following portions of Exhibit B: (1) the names of the companies identified on pages 36, 40 through 42, and 66; (2) the amount AT&T pays StarStar Mobile on page 54; (3) lines 15

1   through 17 on page 86; and (4) the portions requested by AT&T on lines 7 through 10 and on line
2   12 on page 87, on lines 4 and 7 on page 89, on lines 18 through 19 on page 90, on line 15 on page
3   102, and on line 1 on page 109 shall be filed under seal.  The remainder shall be publicly filed.

## BACKGROUND

Plaintiffs filed this action as a purported class action against AT&T regarding AT&T's practices regarding its customers' real-time location data.

### A.   Plaintiffs' Allegations.

Plaintiffs allege that AT&T has been selling its customers' real-time location data to credit agencies, bail bondsmen, and countless other third parties without the required customer consent and without any legal authority.  (Dkt. No. 1 (Compl.), ¶ 1.)  As a telecommunications carrier, AT&T is entrusted with real-time location data for public safety uses, not for commercial sale.  (*Id*., ¶¶ 2, 3.)  Plaintiffs and other AT&T customers have no ability to opt out of its collection.  (*Id*., ¶ 3.)  Yet AT&T has been allowing unauthorized access to its customers' precise, real-time location data to thousands of third parties for years.  (*Id*., ¶ 4.)  AT&T works with location data aggregator companies which specialize in the commercial sale of location data.  (*Id*.)

In May 2018, the New York Times reported that AT&T was selling its customers' real-time location data to a third-party, Securus Technologies, Inc., who then sold that information to law enforcement.  (*Id*., ¶¶ 42, 44.)  In that same month, there was a breach of Securus' server, and millions of AT&T's customers' real-time location data was exposed.  (*Id*., ¶¶ 52, 53.)  In response to this reporting, AT&T stated that it suspended Securus' access to AT&T's customer location data.  (*Id*., ¶ 57.)  AT&T stated in June 2018 that it had taken "prompt steps to protect customer data" and that its "top priority is to protect our customers' information and, to that end, [it would] be ending [its] work with aggregators for these services as soon as practical in a way that preserves important, potential lifesaving services like emergency roadside assistance."  (*Id*., ¶ 58.)

Further reporting revealed that AT&T was also selling its customer location data, through another third-party, Captira, to bail bondspersons, bounty hunters, landlords, and numerous other third parties for wide-ranging commercial purposes.  (*Id*., ¶ 60.)

In January 2019, months after AT&T had promised to stop selling information to the

aggregators, another media report revealed that AT&T was still selling access to customers' real-time location data to location aggregators who then sold the information to bounty hunters, bail bondspersons, vehicle salespersons, and landlords. (*Id*., ¶¶ 63, 65, 66.)

Unauthorized individuals gained access to AT&T customers' real-time location data without consent or legal authority because of AT&T's practice of selling access to this data to data aggregators and hundreds of additional third parties without properly protecting the data or establishing sufficient safeguards and consent mechanisms. (*Id*., ¶ 83.)

AT&T admitted that it did not obtain direct consent from its customers to release their location data. Instead, AT&T maintained that the companies selling its customers' location data were responsible for obtaining consent. (*Id.*, ¶ 127.) However, the aggregators' customers failed to verify consent before releasing the location data. (*Id.*, ¶¶ 129-133, 141, 142.)

The Federal Communications Act requires telecommunications providers – including wireless cell carriers, such as AT&T – to protect their customers' sensitive personal information to which they have access as a result of their unique position as telecommunications carriers. (*Id*., ¶ 176.) Plaintiffs allege that AT&T breached its duty to protect customers' proprietary network information by knowingly allowing countless third parties access to their location data and that AT&T failed to provide proper notice, obtain proper consent, and to safeguard Plaintiffs' and similarly situated customers' location data in violation of the FCA and its corresponding regulations. (*Id*., ¶ 183.)

In its Privacy Policy, AT&T states that it will protect customer's privacy and keep their personal information safe by using encryption and other security safeguards to protect customer data. (*Id*. ¶ 235.) Additionally, AT&T states that it "will not sell [customers'] personal information to anyone, for any purpose. Period." (*Id*.) Plaintiffs allege that those statements are false and misleading. (*Id*., ¶¶ 236-242.) With respect to its customers' proprietary network information, AT&T explicitly, falsely states in its Privacy Policy that it will not sell, trade or share customers' proprietary network information without legal authority. (*Id*., ¶ 244.)

Plaintiffs seek to represent a class of AT&T customers from 2011 to the present who AT&T permitted or caused their carrier-level location data to be used or accessed by any third

3

party without proper authorization.  (*Id*., ¶ 276.)

**B.     Evidence Regarding Whether AT&T Continues to Share Customer Location Data.**

AT&T sent a letter to the Federal Communications Commission ("FCC") stating: [W]e decided in January 2019 to accelerate our phase-out of these services.  As of March 29, 2019, AT&T stopped sharing any AT&T customer location data with location aggregators and LBS providers."  (Dkt. No. 73-2 (Ex. 1 to Declaration of Greg Hill); *see also* Dkt. No. 73-1 (Hill Decl.), ¶ 3 ("As of March 29, 2019, AT&T stopped providing its customers' geolocation information to data aggregators.").)

AT&T submitted additional declarations attesting that:(1) other than for call routing and life-critical Internet of Things("IoT") companies, AT&T stopped providing its customers' geolocation data to non-governmental third parties on March 29, 2019; (2) AT&T continues to provide geolocation information to four life-critical IoT companies when a customer of the life alert company activates his or her pendant to be located during an emergency; and (3) AT&T continues to use the cell tower location of its mobile customers for call routing functions.  (Dkt. No. 127 (Declaration of Greg Hill), ¶¶ 3, 4; Dkt. No. 128 (Declaration of Tad Reynes), ¶¶ 4, 5; Dkt. No. 129 (Declaration of Kris Weterrings), ¶ 4.)

Weterrings explains that there are limited commercial functions of the call routing.  When an AT&T customer uses an abbreviated dialing code, AT&T will disclose the cell tower originating the call to a service provider, which then converts the cell tower location to a county to route the call to an applicable land line.  (Dkt. No. 129, ¶¶ 5, 6.)

AT&T moves to dismiss Plaintiff's request for injunctive relief on the grounds that Plaintiffs lack standing because AT&T ceased doing the alleged misconduct before Plaintiffs filed their complaint.  AT&T also moves to compel arbitration.

**ANALYSIS**

**A.     Legal Standards on Motion to Dismiss.**

When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim.  *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d

1    730, 733 (9th Cir. 1979).  Federal courts can only adjudicate cases which the Constitution or

2    Congress authorize them to adjudicate: cases involving diversity of citizenship, or those cases

3    involving a federal question, or where the United States is a party.  *See, e.g., Kokkonen v.*

4    *Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

5         A Rule 12(b)(1) motion can be either "facial" or "factual."  *Safe Air for Everyone v. Meyer*,

6    373 F.3d 1035, 1039 (9th Cir. 2004).  Where an attack on jurisdiction is a "facial" attack on the

7    allegations of the complaint, the factual allegations of the complaint are taken as true and the non-

8    moving party is entitled to have those facts construed in the light most favorable to him or her.

9    *Federation of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996).

10        In a "factual attack," the moving party questions the veracity of the plaintiff's allegations

11   that "would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  The

12   plaintiff's allegations are questioned by "introducing evidence outside the pleadings."  *Leite v.*

13   *Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "When the defendant raises a factual attack, the

14   plaintiff must support her jurisdictional allegations with 'competent proof,' under the same

15   evidentiary standard that governs in the summary judgment context."  *Id.* (quoting *Hertz Corp. v.*

16   *Friend*, 559 U.S. 77, 96-97 (2010)).  While the plaintiff typically has the burden of proof to

17   establish subject matter jurisdiction, "if the existence of jurisdiction turns on disputed factual

18   issues, the district court may resolve those factual disputes itself."  *Id.* at 1121-22 (citing *Safe Air*

19   *for Everyone*, 373 F.3d at 1039-40).

20   **B.**    **AT&T's Motion to Dismiss.**

21        Standing is a constitutional requirement of all federal courts, as the doctrine requires

22   plaintiffs to "demonstrate a personal stake in the outcome" in order to establish jurisdiction.  *City*

23   *of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

24   Where a plaintiff lacks standing, a federal court "lacks subject matter jurisdiction over the suit."

25   *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  To satisfy the Constitution's

26   standing requirements, a plaintiff must show (1) she has suffered an "injury in fact" that is (a)

27   concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

28   injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely,

United States District Court
Northern District of California

5

as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must show sanding for each form of relief sought – whether it is injunctive relief, damages, or civil penalties. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000).

For injunctive relief, "the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Thus, "the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'" *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original). "[A] plaintiff may allege a future injury" to satisfy the injury in fact "requirement, but only if he or she 'is *immediately* in danger of sustaining some *direct* injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d. 646, 656 (9th Cir. 2002) (emphasis in *Scott*) (quoting *City of Los Angeles*, 461 U.S. at 102). "[A]lthough 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is '*certainly* impending.'" *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (emphasis in *Adarand*) (quoting *Lujan,* 504 U.S. at 565 n. 2). The inquiry is whether the plaintiff makes an adequate showing of injury "sometime in the relatively near future." *Id*.

Past wrongs are "insufficient by themselves to grant standing" for injunctive relief, but "are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Davidson*, 889 F.3d at 967 (quoting *City of Los Angeles*, 461 U.S. at 102 (internal quotation marks omitted). Where standing for injunctive relief "is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* (quoting *City of Los Angeles*, 461 U.S. at 111). In determining whether an injury is similar, courts "must be careful not to employ too narrow or technical an approach." *Id*. Instead, court should examine the issue realistically and consider the context of the inquiry. *Id*. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

6

*Lujan*, 504 U.S. at 561.

Based on the evidence before the Court, AT&T stopped proving its customers' geolocation data to non-governmental entities as of March 29, 2019, almost four months before Plaintiffs filed this action. There is no indication that AT&T stopped due to concern of Plaintiffs filing a lawsuit. Additionally, there is no evidence that AT&T has resumed, or is likely to resume, providing its customers' geolocation data to non-governmental entities. Plaintiffs argue that AT&T's ongoing collection and disclosure of location data, coupled with its insufficient data security policies, creates an ongoing risk of injury. However, Plaintiffs did not allege that AT&T's security of its customers' geolocation data is inadequate. Instead, Plaintiffs alleged that AT&T's disclosure of its location data to third parties created security risks due to breaches of the third parties' systems. Nor does Plaintiffs' other arguments demonstrate that they are likely to be injured by AT&T's practices "sometime in the relatively near future." *Adarand*, 515 U.S. at 211.

Plaintiffs also argue that AT&T's disclosures to life alert companies and for call routing purposes support their request for injunctive relief. However, as the Court previously held, Plaintiffs do not allege that they were customers of life alert companies and thus do not have standing to pursue claims based on such purported disclosures. Additionally, Plaintiffs do not allege, or even argue, that they utilized AT&T's call routing functions. Therefore, Plaintiffs do not have standing to seek injunctive relief based on call routing.

In light of Plaintiffs' lack of standing to pursue injunctive relief based on the disclosure of location data to life alert companies or for call routing purposes, Plaintiffs' requested for discovery would not assist them. The Court allowed Plaintiffs an opportunity to conduct discovery on the sole factual dispute relevant to Plaintiffs' request for injunctive relief – whether AT&T in fact did stop providing its customers' location data to non-governmental entities on March 29, 2019. Plaintiffs' remaining contentions regarding AT&T's purported failure to provide complete discovery responses relate to assertions regarding disclosures to life alert companies and for call routing functions – claims over which Plaintiffs lack standing.

Therefore, the Court finds that Plaintiffs fail to demonstrate that they have standing to pursue injunctive relief and GRANTS AT&T's motion to dismiss.

7

## C.     Legal Standard Applicable to Motions to Compel Arbitration.

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement.  *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 4.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).  The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms."  *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514 U.S. 52, 53-54 (1995).  The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract.  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion.").  Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see also AT&T Mobility v. Concepcion,* 563 U.S. 333, 339 (2011) (The FAA "permits agreements to arbitrate to be invalidated by generally

applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue.") (internal citation and quotation marks omitted).

A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing arbitration bears the burden of proving by a preponderance of evidence any fact necessary to its defense. *Olvera v. El Pollo Loco, Inc.,* 173 Cal.App.4th 447, 453 (2009) (citing *Rosenthal v. Great Western Fin. Securities Corp.,* 14 Cal.4th 394, 413 (1996)).

**D.    AT&T's Motion to Compel.**

In light of the Court dismissing Plaintiffs' claim for injunctive relief, the only remaining issue relevant to AT&T's motion to compel is whether Plaintiffs demonstrate the defense of unconscionability. Plaintiffs bear the burden to show that the arbitration provision is procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal. 4th 83, 114-15 (2000); *see also Malone*, 226 Cal. App. 4th at 1561. "Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable, but 'they need not be present in the same degree.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Armendariz*, 24 Cal. 4th at 114).

Under California law, the concept of substantive unconscionability relates to the actual terms of the arbitration agreement and whether those terms are "overly harsh" or "one-sided." *Armendariz*, 24 Cal. 4th at 114. Plaintiffs argue that the American Arbitration Association's consumer arbitration rules impermissibly restricts discovery because it deprives Plaintiffs of the ability to take depositions. (Dkt. No. 63 (Plaintiffs' Opp.) at 12.).

With respect to discovery, the California Supreme Court held that parties need not be provided the full range of discovery in arbitration but are "at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) . . ." *Armendariz*, 24 Cal. 4th at 105. For example, courts have upheld arbitration agreements that limit a party to one non-expert deposition so long as the arbitrator has broad discretion to order the discovery needed to sufficiently litigate the

parties' claims. *See e.g.*, *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010). On the other hand, courts have found unconscionable discovery provisions limiting depositions to one or two witnesses unless parties make a showing of "substantial need," "i.e., unless the parties could demonstrate that a fair hearing would be 'impossible' without additional discovery." *Ontiveros v. DHL Express (USA), Inc.*, 164 Cal. App. 4th 494, 512-13 (2008).

Here, the applicable arbitration rules provide that the arbitrator may direct that specific documents and other information be shared between the parties and that the parties shall identify witnesses they plan to present. Moreover, the arbitrator may require the parties to exchange additional information if he or she determines that such "exchange is needed to provide for a fundamentally fair process." *See* American Arbitration Association Consumer Arbitration Rules at § R-22.[1] Because the applicable arbitration rules provide arbitrator with broad discretion to order discovery and Plaintiffs are not required to demonstrate a "substantial need," the Court finds that the discovery procedures are not substantively unconscionable. In the absence of any substantive unconscionability, Plaintiffs fail to demonstrate that the arbitration agreement is unconscionable. Accordingly, the Court GRANTS AT&T's motion to compel arbitration.

In light of the fact that Plaintiffs' remaining claims shall be arbitrated, the Court GRANTS AT&T's request to dismiss this action. *See Sparling v. Hoffman Const. Co.,* 864 F.2d 635, 638 (9th Cir.1988) (holding that the courts may dismiss a complaint, rather than stay the action

---

[1] The AAA consumer arbitration rules provide:
 (a) If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct
   1) specific documents and other information to be shared between the consumer and business, and
   2) that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.
 (b) Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.
 (c) No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.
 (d) The arbitrator has authority to resolve any disputes between the parties about exchanging information.
(Dkt. No. 35-19 (Exhibit 1 Attached to the Declaration of Kevin S. Ranlett), § R-22.)

pending arbitration, when a court determines that all claims asserted in the complaint should be arbitrated); *see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060(9th Cir. 2004) (affirming dismissal of claims that were that were subject to arbitration).

## CONCLUSION

For the foregoing reasons, the Court GRANTS AT&T's motion to dismiss Plaintiffs' request for injunctive relief and GRANTS AT&T's motion to compel arbitration. The Court will issue a separate judgment. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: February 16, 2021

SALLIE KIM
United States Magistrate Judge

11